GEORGE KANZLER, complainant-appellant,

*v.*

MARY A. SMITH et al., defendants-respondents, and SMITH & KANZLER, INCORPORATED, a corporation, defendant-appellant.

[Argued February term, 1938. Decided May 11th, 1938.]

*Mr. Melvin J. Koestler,* for Smith & Kanzler.

*Mr. Samuel Koestler,* for the complainant-appellant.

*Mr. John J. Stamler,* for Mary A. Smith et al.

*Mr. Merritt Lane,* for Mary Patricia Smith.

*Mr. Benjamin Nohemie,* for Benjamin W. Kanzler et al.

The opinion of the court was delivered by

BODINE, J.

The dispute before the court concerns the proper disposition of partnership assets. George Kanzler and Patrick J. Smith established a business in asbestos products and were equal partners. The concern prospered because of the industry and personal service of both partners. The original contributions to the business were the skill, time and diligence of the partners. As profits grew they were turned back into the business. On August 25th, 1930, Smith died leaving what purported to be his last will and testament. His daughter, Mary Patricia Smith, was, however, born in 1921 after the execution of this will. It was, therefore, void under *Rev. Stat. 3:2-15.* Notwithstanding, it was probated by the surrogate of Union county and the widow named as executor and sole beneficiary therein proceeded to act under the authority improperly granted. Kanzler, the surviving partner, and the widow caused a corporation to be formed to take over the business of the partnership, issuing stock against the book value of the partnership assets as of the close of business, December 30th, 1930. Mrs. Smith became treasurer of the new corporation and the corporation has paid her dividends on the stock as well as a salary. The corporation has also redeemed a portion of the preferred stock issued. The infant daughter, the will being void, was entitled to two-thirds of

the estate left by her father. The probate of the will, the formation of the corporation, and the other acts of the widow in seizing her husband's entire estate were obviously improper and for such acts she was rightly held to account.

The adjudication below that the infant was equitably entitled to two-thirds of the net personal estate of her deceased father, and that he was entitled to one-half of the net value of the partnership assets was entirely correct. The court found that because of the transfer of partnership accounts to Smith and Kanzler, Incorporated, the corporation became liable to the infant for one-third of the net value of the partnership assets as of that time, except to the extent that payments have been made. The decree further directed the corporation to pay the value of one-third of the partnership assets to the infant's guardian, and directed the widow to surrender a proportionate share of the stock issued by the corporation to her as executrix for cancellation. The decree further provides that Kanzler and Mrs. Smith were jointly and severally liable to the infant for any amount not paid by the corporation, and that for any sum paid by Mrs. Smith she was entitled to the corresponding percentage of the stock issued by the corporation to her as executrix, and that Kanzler was similarly entitled to a corresponding percentage of the stock issued by the corporation to Mrs. Smith as executrix to the extent to which he made payment. The decree provides further with respect to an accounting by Mrs. Smith, as executrix, with which we are not presently concerned.

The decree fixes the value of one-third of the partnership assets as of January 1st, 1931, at $89,733.16 (book value), and the liability of the parties named as of the date of the decree in the sum of $96,668.15.

Upon the death of Smith, Kanzler, the surviving partner, was under a duty to dispose of the firm's assets and pay over one-half of the net proceeds to the legal representative of the deceased partner's estate. The decedent's will having been improperly probated, the widow illegally entered into the contract for the formation of the corporation. All steps thereafter taken were prejudicial to the rights of the infant.

It would have been improper for the guardian of the infant to have made an investment in stock in a manufacturing concern. It could never be for the best interest of the infant to be an investor in a business enterprise. The parties may have been advised that they had no right to deal with the business in the manner adopted. However, that which they did was wrong and unfavorably affected the rights of the infant. Such a wrong, if possible, must be undone. This cannot be done without setting aside the wrong accomplished by the organization of the corporation. If the infant's share, less deduction for moneys paid may now be secured to her, the corporation should be dissolved and the remaining share of the deceased partner in the net assets should be paid to his legal representative, with interest, less deductions for money paid. The assets, now the property of the corporation, are not precisely the same as the property of the partnership; but the assets, the property of the partnership, are known and their value can be determined by competent proof. That is, their value upon liquidation. The book value, as shown by the partnership books at $259,199.49 on January 1st, 1931, is no criterion of the true value. Over the depression years, 1931-1936, the corporation earned an average of about $4,000 a year. If it were to continue its life it would be necessary for it to embark into new enterprises. When the partnership was formed, it was the practice to insulate heating pipes. Since then the practice has developed of insulating the whole house. Hence, there is less need for insulating pipes and the corporation has suffered from other changes in the business trend. Neither the surviving partner nor the widow should be unduly penalized for that which was done. Though told the will was void, it was actually probated. This, no doubt, lulled their conscience. In equity, the *status quo* should be restored if the infant's interests can be duly protected. Because the infant must not be subjected longer to the perils and hazards of a business venture, in which the entire assets of the corporation may be absorbed, the entire proceeding under the contract must be set aside, provided it is now possible to determine the amount of money which the deceased

partner's estate should have received on dissolution, plus interest, less credits for payments made. This can be done in the court of chancery upon proof of true value of the partnership assets on liquidation as distinct from book value as shown on the partnership books. The liquidation of the partnership property, in accordance with law, does not contemplate more than disposal of the physical assets and an accounting by the surviving partner for the value of the deceased partner's interest, including the value of goodwill, if any. *47 C. J. 1062.* The corporation, the surviving partner, and the widow are all jointly and severally liable to see to it that the infant's guardian is paid the sum of money which should have been realized upon the liquidation of the partnership assets as of the time the corporation was formed. Upon payment of this sum, stock should be canceled as the equities may require and the corporation should be dissolved and the remaining stockholders should receive proportionate shares of the liquidated assets.

The decree will be remanded to the court of chancery for further action not inconsistent herewith.

*For modification*—PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 12.